<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ROBERTA ALLEN NELSON,** | |
| *Plaintiff,* | |
| **v.** | Civil Action No. 21-14681 |
| **COMMISSIONER OF SOCIAL SECURITY,** | OPINION |
| *Defendant.* | |

ARLEO, UNITED STATES DISTRICT JUDGE

**THIS MATTER** comes before the Court on Plaintiff Roberta Allen Nelson's ("Plaintiff") request for review of Administrative Law Judge Kevin Kenneally's ("Judge Kenneally" or the "ALJ") decision regarding Plaintiff's application for Supplemental Security Income ("SSI") Benefits and Disability Insurance Benefits ("DIB"), pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g).  For the reasons set forth in this Opinion, the Commissioner of Social Security's (the "Commissioner") decision is **AFFIRMED**.

> I.   STANDARD OF REVIEW AND APPLICABLE LAW
>
>      A.  Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).  The Commissioner's application of legal precepts is subject to plenary review, but the Commissioner's factual findings must be affirmed if they are supported by substantial evidence. Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate."  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also McCrea v.

Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004) (explaining that substantial evidence "need not rise to the level of a preponderance").

"[T]he substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Accordingly, the standard places a significant limit on the district court's scope of review: it prohibits the reviewing court from "weigh[ing] the evidence or substitut[ing] its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Even if this Court would have decided the matter differently, it is bound by the ALJ's findings of fact so long as they are supported by substantial evidence. Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012).

In determining whether there is substantial evidence to support the Commissioner's decision, the Court must consider: "(1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the [Plaintiff] and corroborated by family and neighbors; and (4) the [Plaintiff's] educational background, work history, and present age." Holley v. Colvin, 975 F. Supp. 2d 467, 475 (D.N.J. 2013), aff'd 590 F. App'x 167 (3d Cir. 2014).

### B. The Five-Step Disability Test

Under the Social Security Act ("the Act"), disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1). To determine whether a claimant is disabled under the Act, the Commissioner applies a five-step test. 20 C.F.R. § 416.920. First, the Commissioner must determine whether the claimant is currently engaging in "substantial gainful activity." Id. "Substantial gainful activity" is work activity involving physical or mental

activities that are "usually done for pay or profit, whether or not a profit is realized."  20 C.F.R. § 416.972.  If the claimant is engaged in substantial gainful activity, then he or she is not disabled, and the inquiry ends.  Jones, 364 F.3d at 503.

Alternatively, if the Commissioner determines that the claimant is not engaged in substantial gainful activity, then the analysis proceeds to the second step: whether the claimed impairment or combination of impairments is "severe."  20 C.F.R. § 416.905(a).  The regulations provide that a severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c).  If the claimed impairment or combination of impairments is not severe, the inquiry ends, and benefits must be denied.  See id.

At the third step, the Commissioner must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404 Subpart P Appendix 1.  20 C.F.R. § 416.920(d).  If so, a disability is conclusively established, and the claimant is entitled to benefits.  Jones, 364 F.3d at 503.  If not, the analysis proceeds.

Prior to the fourth step, the Commissioner must determine the claimant's residual functional capacity ("RFC") to perform work activities despite the limitations from the claimant's impairments.   20 C.F.R. §§ 416.920(e); 416.945.   In considering a claimant's RFC, the Commissioner must consider "all the relevant medical and other evidence" in the claimant's record.  20 C.F.R. § 416.920(e).  Then, at step four, the Commissioner must decide if the claimant has the RFC to perform her past relevant work.  20 C.F.R. §416.920(f).  If so, then the claim for benefits must be denied.  20 C.F.R. § 416.960(b)(3).

Finally, at the fifth step, if the claimant is unable to engage in past relevant work, the Commissioner must ask whether "work exists in significant numbers in the national economy that [the claimant] can do, given [his] residual functional capacity and vocational factors." 20 C.F.R. § 416.960(c). The claimant bears the burden of establishing steps one through four. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n.5 (1987). The burden of proof shifts to the Commissioner at step five. <u>Id.</u>

## II. BACKGROUND

### A. General Background

Plaintiff filed applications for DIB and SSI on March 20, 2019, when she was 59 years old, alleging disability beginning September 20, 2016. Administrative Transcript ("Tr.") 110-112, 319-322, ECF No. 7. Plaintiff alleged disability due to hypertension, diabetes, a left meniscus tear, osteoarthritis, cervical spine degenerative disc disease, lumbar spine degenerative disc disease, and generalized anxiety disorder ("GAD"). Tr. 14. Plaintiff completed up to twelfth grade in school and has work experience as a resident supervisor. Tr. 110-113.

Plaintiff submitted three function reports dated April 26, 2019, May 24, 2019 and August 30, 2019, detailing the impacts of her disability (the "Function Reports"). In these Function Reports Plaintiff stated that she had trouble paying attention for long periods of time, lost focus quickly, had problems following written and verbal instructions and had trouble handling change in her routine. <u>See</u> Tr. Exs. 7E, 9E, 12E. Plaintiff also reported that she can leave the house independently, care for her pet, shop in stores, prepare meals, complete household chores, and manage her finances. <u>Id.</u>

On May 20, 2019, Dr. Steven Yalkowsky, Ph.D. ("Dr. Yalkowsky") conducted a psychiatric evaluation of Plaintiff. Dr. Yalkowsky found that the Plaintiff's diagnoses of major

depressive disorder and panic disorder were moderate in nature.  Tr. 20.  Throughout the examination Dr. Yalkowsky noted that Plaintiff presented with typical and appropriate social skills but would frequently burst into hysterical crying.  Tr. 486.  Dr. Yalkowsky concluded that her impairments were moderate, and her prognosis was guarded.  Id.

On May 23, 2019, State Agency mental health consultants also assessed Plaintiff's mental impairments.  Tr. 145.  The State Agency concluded that Plaintiff's Depressive, Bipolar and related disorders were severe, and her ability to concentrate, persist, maintain pace and interact with others was moderately impaired.  Id.  The Agency also concluded that Plaintiff could perform 3-4 step instructions and maintain occasional contact with the public.  Tr. 148, 163.  This assessment was affirmed at the reconsideration level on November 4, 2019.  Tr. 160-161.

### B.  Procedural History

The Social Security Administration denied Plaintiff's claims on June 24, 2019, and on November 29, 2019, denied the claims upon reconsideration.  Tr. 170-174, 176-178.  After requesting a hearing, Plaintiff appeared and testified before the ALJ in a remote hearing held on July 20, 2020.  Tr. 106-137.  On July 29, 2020, the ALJ issued a decision finding that Plaintiff could perform light work, including her past relevant work as a resident supervisor, and therefore was not disabled within the meaning of the Act.  Tr. 11-22.  On June 8, 2021, the Appeals Council denied Plaintiff's request for review.  Tr. 1-7.  Plaintiff thereafter appealed the decision to this Court.   This Action followed.

### C.  The ALJ's Decision

Using the five-step framework, the ALJ determined that Plaintiff was not disabled prior to July 29, 2020.  Tr. 11-22.  At step one, the ALJ found that the Plaintiff did not engage in substantial

gainful activity since September 20, 2016, the alleged onset date.[1]  Tr. 11.  At step two, the ALJ found that the Plaintiff had the following severe impairments: (1) left knee torn meniscus and osteoarthritis, (2) cervical spine degenerative disc disease, (3) lumbar spine degenerative disc disease, (4) hypertension, and (5) diabetes mellitus.  Tr 14.  The ALJ concluded that these impairments significantly limited Plaintiff's ability to perform basic work activities as required by SSR 85-28.[2]  Id.

Notably, the ALJ concluded that all of Plaintiff's psychiatric ailments were non-severe.  See id.  The ALJ came to this conclusion by examining how Plaintiff's mental impairments affect four functional areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.  20 C.F.R. § 404.1520a(c)(3).  At all four steps of the analysis, the ALJ found that the Plaintiff's mental impairments of major depression disorder, panic disorder, and opioid use disorder, considered singly and in combination, did not cause more than a minimal limitation in all four functional areas and should be categorized as non-severe.  Tr. 14-20; see 20 CFR, Part 404, Subpart P, Appendix 1.

However, because the ALJ did find Plaintiff had severe impairments, the analysis proceeded to step three.  At step three, the ALJ found that none of Plaintiff's impairments, individually or collectively, met or medically equaled the criteria of a listed impairments.  Before proceeding to step four, the ALJ found that Plaintiff had the RFC to perform light work defined in 20 CFR 404.1567(b).  Tr. 17.  In reaching this determination, the ALJ again evaluated the totality of the

---

[1] While the Plaintiff did work after the onset date, the ALJ concluded that her earnings did not rise to the monthly threshold to be considered as substantial gainful activity.  Tr. 11-12.

[2] The ALJ also found that the Plaintiff has the following non-severe impairments: (1) hyperlipidemia, (2) major depression disorder, (3) anxiety disorder, and (4) opioid use disorder.

evidence in the record, including objective medical and psychiatric reports, medical opinion evidence, and Plaintiff's testimony.  Tr. 17-21.  Specifically, the ALJ noted that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" her allegations concerning "the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" Tr. 18.

At step four, the ALJ found that Plaintiff was able to perform relevant work as a resident supervisor.  Tr. 22.  The ALJ concluded that this work was substantial gainful activity, was performed long enough for the Plaintiff to achieve average performance and was performed within the relevant period.  Id.  The ALJ also compared the Plaintiff's RFC with the physical and mental demands of Plaintiff's previous job and found that the Plaintiff can perform the work as it is "actually and generally performed."  Id.  The ALJ determined that Plaintiff can perform her work as a resident supervisor with the assistance of a vocational expert ("VE") who evaluated Plaintiff's age, education, work experience, and RFC.  The ALJ thus concluded that Plaintiff was not disabled within the meaning of the Act from September 20, 2016, through July 29, 2020.

## II.   ANALYSIS

Plaintiff urges the Court to reverse the Commissioner's final administrative decision and order the payment of benefits or, in the alternative, vacate and remand the ALJ's decision for further administrative proceedings.  See Plaintiff's March 15, 2022, Brief, ECF No. 12 ("P. Br.") at 8-13. First, Plaintiff argues that the ALJ erred in determining her mental impairments were non-severe. Id. at 3.  Second, Plaintiff maintains a separation of powers argument that would entitle her to a re-hearing of her disability claim because the ALJ "did not have the legal authority to make the

decisions they made in this case, as that authority derived directly from the former Commissioner

of Social Security." Id. The Court disagrees and addresses each argument in turn.

### A. The ALJ's Finding that Plaintiff's Mental Impairments were not Severe

Plaintiff first argues that the ALJ erred in determining that her mental impairments were

non-severe. An impairment or combination of impairments is considered severe only if it

significantly limits a claimant's ability to do basic work activities. 20 C.F.R. § 404.1521(a); Social

Security Ruling (SSR) 85-28.[3]  When determining whether an impairment is severe the ALJ must

decide whether the condition results in functional limitations, which significantly limit a claimant

from performing these basic work activities. See 20 C.F.R. § 404.1521(a). Plaintiff must

demonstrate that her mental impairments qualify as severe. See Bowen v. Yuckert, 482 U.S. 137,

146 (1987) (explaining that the Plaintiff bears the burden of showing that her mental impairments

qualify as a severe impairment). Plaintiff argues that her mental impairments should have been

considered severe based on medical evidence that the ALJ failed to properly consider. See P. Br.

at 12-16. The Court disagrees.

For claims filed after March 27, 2017, a new regulatory framework applies to the ALJ's

evaluation of medical opinions. See Revisions to Rules Regarding the Evaluation of Medical

Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) ("For claims filed on or after March 27, 2017, the

agency revised it regulations that govern medical opinions"). Under the new regulations, the ALJ

does not need to "defer or give any specific evidentiary weight, including controlling weight, to

any medical opinion(s) or prior administrative medical finding(s), including those from [the

---

[3] Examples of basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. See 20 C.F.R. § 404.1521(b).

claimant's own] medical sources." 20 C.F.R. § 404.1520c(a).  Now ALJs only need to consider the persuasiveness of a medical opinion by examining the opinion's supportability and consistency.[4]  Id.  In addition, the new guidance notes that an ALJ only needs to explain that he considered the supportability and consistency of the opinion.  Id. at § 404.1520c(b)(2)-(3); Cosme v. Comm'r of Soc. Sec., 845 F. App'x 128, 132 (3d Cir. 2021) (explaining that an ALJ only needs to sufficiently explain his findings to permit meaningful review and does not need to use specific language or adhere to a particular format).

Here, the ALJ sufficiently considered the medical opinions of both Dr. Yalkowsky and the State Agency mental health consultants.  Dr. Yalkowsky determined that Plaintiff's major depressive disorder "moderately" affected her ability to function, and the State Agency found her ability to concentrate, persist, maintain pace, and interact with others also moderately impaired Plaintiff's ability to function.  Tr. 487, 145.  However, as prescribed by the new guidelines, the ALJ considered the extent to which these opinions were consistent with, and supported by, other medical and non-medical sources in the Record.  In doing so, the ALJ concluded that Plaintiff's mental impairments "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe."  Tr. 14.

First, the ALJ noted that at her May 2019 consultative examination Plaintiff stated that she was not taking any medications for her mental impairments, was not in any on-going mental health treatment, and had not been recently hospitalized for a mental health emergency.  Tr. 485-89, 716-926, 979-1007.  Plaintiff also reported that she retained mental capacity to manage her own money, shop in stores, prepare meals, care for her pets, travel independently, attend church, and perform

---

[4] Other, less important factors an ALJ may consider when evaluating the persuasiveness of a medical opinion include: (1) the source's relationship with the claimant; (2) the source's specialization; (3) familiarity with other evidence in the claim folder and (4) familiarity with the disability program.  20 C.F.R. § 404.1520(c).

her own personal hygiene and grooming tasks.  Tr. 366-73, 382-89.  The ALJ further noted that

the record did not reflect complaints, symptoms, findings, or treatment for Plaintiff's mental health

impairments that would support a finding that they were severe. Tr. 14.  Much of what Plaintiff

stated in her Function Reports also contradicts Dr. Yalkowsky and the State's findings involving

Plaintiff's mental health.  For example, in her Function Report Plaintiff denies having trouble

getting along with others and reported that she retained the mental capacity to shop in stores, go

outside independently on a daily basis, travel via public transportation, go to the movies and out

to eat, and attend church three times a week.  See Tr. 366-73, 382-89.  As a result, the ALJ is

entitled to give these medical opinions less deference and determine that the ailments were not

severe.  See Connors v. Comm'r of Soc. Sec., No. 21-3219, 2022 WL 41031617, at *2 (3d Cir.

Sept. 6, 2022) ("When faced with conflicting medical evidence, the ALJ is entitled to weigh all

evidence in making its finding") (citing Brown v. Astrue, 649 F.3d 193, 196 (3d Cir. 2011)

(internal quotations omitted).[5]

The Court finds that the ALJ's decision comported with the new guidelines and sufficiently

considered the medical opinions.  Accordingly, the Court must affirm so long as substantial

evidence supports the ALJ's fact-finding. 42 U.S.C. § 405(g) ("The findings of the Commissioner

of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .").

The Court is satisfied that substantial evidence supports the conclusion that Plaintiff is not disabled

under the Act.[6]

---

[5] See also e.g., Debevits v. Saul, No. CV 20-600, 2021 WL 2590140, at *4 (W.D. Pa. June 24, 2021) (finding that the ALJ "appropriately assessed [Plaintiff's doctor's] medical opinion in light of these standards" where the ALJ concluded that a physician's opinion was not persuasive because "the limitations espoused [by the physician] were not consistent with or supported by other evidence of record such as . . . the treatment records [which] indicated a greater ability to walk, lift, and stand").

[6] Even if the Court were to conclude that the ALJ erred at step two, remand or reversal is not warranted because the ALJ's inquiry did not end at step two.  The ALJ found that Plaintiff had other impairments that were severe, so the

**B. The Constitutionality of the Commissioner's Removal**

Plaintiff next argues that because the process through which the Social Security Commissioner is removed violates the Constitution, the ALJ's decision denying her disability benefits claim is defective and she should be entitled to a new hearing.[7]   The Supreme Court determined that even when an unconstitutional statutory removal restriction exists, a plaintiff seeking relief on that basis must show that the restriction caused her direct harm.  Collins v. Yellen, 141 S. Ct. 1761, 1787-89 (2021).[8]   Plaintiff must therefore show the required nexus between Section 902(a)(3)'s removal restriction and the denial of her benefits claim.  Id. at 1789 (Plurality and concurring opinions requiring the showing that the "unconstitutional provision . . . inflict[ed] compensable harm").

Here, Plaintiff has failed to show how the President's inability to remove the Commissioner without cause affected the ALJ's specific disability benefits decision.[9]   See also Decker Coal Co. v. Pehringer, 8 F.4th 1123, 1138 (9th Cir. 2021) ("[T]here is no link between the ALJ's decision awarding benefits and the allegedly unconstitutional removal provisions. And nothing commands

---

analysis proceeded to step three.  Finding other severe impairments is noteworthy because any failure to identify other conditions as being severe does not compromise the integrity of the analysis.  See Sales v. Comm'r of Soc. Sec., 229 F. App'x 140, 145 n.2 (3d Cir.2007) ("Because the ALJ found in Sales' favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless.").  However, substantial evidence supports the ALJ's RFC determination that Plaintiff can perform work at a light exertional level.

[7] The parties agree that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause.  See Office of Legal Counsel, U.S. Dep't of Justice, Constitutionality of the Commissioner of Social Security's Tenure Protection, 2021 WL 2981542 (July 8, 2021).

[8] Although Collins involved a challenge to the structure of the Federal Housing Finance Agency its discussion of the availability of relief involves a similar factual scenario to this case.  See generally, Decker Coal Co. v. Pehringer, 8 F. 4th 1123, 1137 (9th Cir. 2021) ("Collins is controlling with respect to the remedy for any unconstitutionality in the removal provisions.").

[9] Plaintiff argues that the SSA policy that the decisions of the ALJ and the Appeals Council are the decisions of the Commissioner, not an individual judge.  The ALJs and AC decide disability benefits pursuant to a delegation of authority from the Commissioner.  Arguing they are the same entity for purposes of the removal provision oversimplifies the analysis.

us to vacate the decisions below on that ground."); <u>Mor v. Kijakazi,</u> No. 21-1730, 2022 WL 73510, at *5 (D.N.J. Jan. 7, 2022) (finding that "Plaintiff fails to point to any connection between the Commissioner's removal . . . and the ALJ's decision (or any other action in this case) . . . As a result, the requisite nexus is not met[.]").  Plaintiff asks this Court to set aside an ALJ's decision based on a statutory removal provision, without citing any facts suggesting that but for the removal provision, her claim would have been decided differently.  Under the Plaintiff's theory, she should be awarded a re-hearing regardless of whether she can show Section 902(a)(3)'s restriction on the President's ability to remove the Commissioner had any effect on her benefits claim.  <u>See</u> <u>Collins,</u> 141 S. Ct. at 1803 (Kagan, J., concurring) (noting the "chaos" that could stem from undoing over 2 million annual disability claims).  An unconstitutional removal provision does not automatically void an official's actions carrying out responsibilities of their office.  <u>See</u> 42 U.S.C. § 904(a)(1); <u>see</u> <u>Collins</u>, 141 S. Ct. at 1788 n. 23 ("The unlawfulness of [a] removal procession does not strip [a government official] of the power to undertake the other responsibilities of his office.").  As a result, the Court finds that the requisite nexus is not met and denies Plaintiff's appeal on this ground.

III.   **CONCLUSION**

For the foregoing reasons, the determination of the Commissioner is **AFFIRMED**.

Date: March 15, 2023                              **/s/ Madeline Cox Arleo**

                                                  **Hon. Madeline Cox Arleo**

                                                  **UNITED STATES DISTRICT JUDGE**